**NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

|  |  |  |
|---|---|---|
| MARK GREEN, | : | |
| | : | |
| Petitioner, | : | Civil Action No. 16-5608(RMB) |
| | : | |
| v. | : | |
| | **:** | **OPINION** |
| | : | |
| MARK KIRBY, | : | |
| | : | |
| Respondent. | : | |
| | : | |

**BUMB**, U.S. District Judge

On September 15, 2016, Petitioner, an inmate incarcerated in the Federal Correctional Institution in Fairton, New Jersey, filed a petition under 28 U.S.C. § 2241, challenging the Bureau Of Prison's ("BOP") decision to revoke Petitioner's early release date pursuant to 18 U.S.C. § 3621(e). (Pet., ECF No. 1 at 6.) Respondent filed an answer and response in opposition to the petition ("Answer"). (ECF Nos. 12.)[1] Petitioner filed a motion for temporary restraining order ("Mot. for TRO"), seeking an early determination of the issue presented in his habeas petition. (Mot. for TRO, ECF No. 5.) For the reasons discussed below, the Court

---

[1] The Court granted Respondent's motion to file Exhibits D, E, F, G, H, I and K to the Declaration of Brian Redondo under seal. (Order, ECF No. 16.)

denies the habeas petition, and dismisses the motion for a temporary restraining order as moot.

I.    FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a federal inmate who was incarcerated at FCI Fairton when he filed this petition. (Mem. of Law in Supp. of Pet. for Habeas Corpus Relief Under 28 U.S.C. § 2241 ("Petr's Mem."), ECF No. 1-3 at 2.) On September 12, 2011, Petitioner was sentenced in the United States District Court for the Eastern District of Pennsylvania to a 139-month term of imprisonment followed by a three-year term of supervised release for conspiracy and identity theft. (Id.) He has a projected Good Conduct Time ("GCT") release date of April 7, 2018, and a conditional release date of July 30, 2017, pursuant to 18 U.S.C. § 3621(e), if he successfully completes all requirements of the BOP Residential Drug Abuse Program ("RDAP.") (Answer, ECF No. 12 at 3, citing Declaration of Alisha Gallagher ("Gallagher Decl."), ECF No. 12-1, Exhibit 1.)



Petitioner arrived at FCI-Fairton on September 1, 2015, where he was assigned to complete the unit-based component of the RDAP.

(Redondo Decl., ECF No. 12-2 at 92; ECF No. 14 at 23.) 





II.  DISCUSSION

    A.  <u>RDAP</u>

The BOP operates a drug abuse treatment program that identifies inmates in need of substance abuse treatment. 28 C.F.R. § 550.50 *et seq.*; BOP Program Statement 5330.11. (Redondo Decl., ECF No. 12-2 at 4-5.) To successfully complete the RDAP, inmates must complete a minimum of 500 hours and six months of unit-based treatment; follow-up services pending transfer to community based treatment; and community-based treatment (TDAT). (Redondo Decl., ECF No. 12-2 at 17.)

B. Early Release Procedures Under 18 U.S.C. § 3621(e)

18 U.S.C. § 3621(e)(2)(B), provides that the Director of the BOP may reduce the period a prisoner convicted of a nonviolent offense remains in custody after the prisoner successfully completes a treatment program, but the reduction may not be more than one year from the term the prisoner must otherwise serve. Pursuant to 28 C.F.R. § 550.55(a), effective May 26, 2016:

> (a) Eligibility. Inmates may be eligible for early release by a period not to exceed twelve months if they:
>
> . . .
> 2) Successfully complete a RDAP, as described in § 550.53, during their current commitment.

Upon a qualified inmate's entry into RDAP, the Drug Abuse Program Coordinator ("DAPC"), or designee, will within 15 working days, forward a Notice of § 3621(e) Date form (BP-A0764) to BOP's Designation and Sentencing Computation Center (DSCC), which is

6

responsible for the inmate's sentence computation and release date under 18 U.S.C. § 3621(e)(2)(B). (Redondo Decl., ECF No. 12-2 at 75.) Within 15 working days of the DSCC staff receiving the Notice of § 3621(e) Date form, computation staff will enter the estimated completion date and recalculate the inmate's sentence. (Id.)

III. Argument

A. Exhaustion

Petitioner challenges the BOP's revocation of his early release date under the Due Process and Equal Protection Clauses of the Fourteenth Amendment. (Petr's Mem., ECF No. 1-3.) First, Petitioner asserts Dr. Redondo arbitrarily revoked his early release date "without any warning or any right for him to contest the arbitrary decision." (Id. at 6.) Petitioner contends there is no authority in 28 U.S.C. § 550.53 permitting the RDAP Program Coordinator to revoke an early release date, thus "the whole statute violates the Procedural Due Process Clause of the Fourteenth Amendment to the United States." (Id.) Petitioner claims that before his early release date may be revoked, due process requires that he receive a statements of reasons, a right to present witnesses before an impartial tribunal, a preliminary and final revocation hearing, and notice and opportunity to be heard. (Id.)

Second, Petitioner contends he was deprived of substantive due process because he "had a settled expectation of being released

on 10/13/16," contingent only upon completion of 500 hours. (<u>Id.</u> at 7.) Third, Petitioner contends the BOP's action of promising a particular early release date and revoking it without any process shocks the conscience in violation of substantive due process. (Petr's Mem., ECF No. 1-3 at 8.) Fourth, Petitioner asserts he was denied due process because Dr. Redondo was not impartial; he acted as the charging officer, the investigating officer, and the adjudicating officer. (<u>Id.</u> at 12.)

Fifth, Petitioner claims Dr. Redondo's revocation of his early release without due process violated the Equal Protection Clause of the Fourteenth Amendment. (<u>Id.</u>) Petitioner argues that within RDAP there are two groups of inmates who are similarly situated and yet treated differently, inmates who are eligible for early release after RDAP completion, and inmates who are not eligible for early release after RDAP completion. (<u>Id.</u> at 14.) Inmates who are eligible for early release upon completion are treated more harshly for minor infractions. (<u>Id.</u>)

Sixth, Petitioner asserts an Equal Protection Clause violation based on race. (<u>Id.</u> at 16.) Petitioner alleges there is only one non-white RDAP staff member, and white inmates get preferential treatment. (<u>Id.</u>) African-American inmates are punished "at a rate of (15) times worse than that of a white peer." (<u>Id.</u>) Petitioner cites DTS Lowe's behavior of allowing white inmates to give feedback against African-Americans but not

allowing African-Americans to give feedback against white inmates. (Id. at 17.) Petitioner offers examples of white inmates not being punished for the same infractions as African-Americans. (Petr's Mem. 1-3 at 17-18.)

Seventh, Petitioner asserts he was retaliated against for writing and distributing a voluntary survey requesting inmate feedback about the RDAP Program, and for filing a grievance against RDAP staff on August 26, 2016. (Id. at 20.)

Respondent contends that Petitioner has not exhausted his administrative remedies with respect to his challenge to the Bureau's RDAP placement modification, nor has he demonstrated cause as to why exhaustion should be excused. (Answer, ECF No. 12 at 16.) Petitioner asks the Court to excuse him from the exhaustion requirement because if he was forced to wait until he exhausted his remedies, he would lose the benefit of the early release date that he seeks here. (Petr's Mem., ECF No. 1-3 at 1.) He is requesting to have his early release date of October 13, 2016 reinstated. (Id. at 5.)

Although there is no statutory exhaustion requirement in 28 U.S.C. § 2241,[2] "[a] federal prisoner ordinarily may not seek habeas corpus relief until he has exhausted all available administrative remedies." Bradshaw v. Carlson, 682 F.2d 1050,

---

[2] Griffin v. Ebbert, 640 F. App'x 181, 183 n. 2 (3d Cir. 2016) (citing Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000).

1052 (3d. Cir. 1981) (citations omitted).  The exhaustion doctrine serves three goals:  1) facilitating judicial review by development of a factual record in the appropriate agency applying its expertise; 2) conservation of judicial time if the agency grants relief; and 3) respect for administrative autonomy by giving the agency an opportunity to correct its own errors.  <u>Id.</u>

Exhaustion is not required when it would not serve any of the three basic goals.  <u>Id.</u> (citing <u>U.S. ex rel. Marrero v. Warden, Lewisburg Penitentiary</u>, 483 F.2d 656, 659 (3d Cir. 1973)).  Thus, exhaustion is not required when the issue "involves only statutory construction" because there is no need for an agency to develop a factual record.  <u>Id.</u>  The second and third goals of the exhaustion doctrine are not served where the Respondent consistently opposed the petitioner's statutory construction.  (<u>Id.</u>)

The Bureau has established a three-tiered system whereby a federal prisoner may seek formal review of any aspect of his imprisonment.  28 C.F.R. §§ 542.10-542.19 (1997).  For the first step, "an inmate shall . . . present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy."  28 C.F.R. § 542.13(a).  Next, he may file "a formal written Administrative Remedy Request, on the appropriate form (BP-9), [within] 20 calendar days following the date on which the basis

10

for the Request occurred." 28 C.F.R. § 542.14(a). The Warden has twenty (20) days to respond. 28 C.F.R. § 542.18.

An inmate who is not satisfied with the Warden's response may submit an appeal, on the appropriate form (BP-10), to the Regional Director within twenty (20) calendar days of the date the Warden signed the BP-9 response. 28 C.F.R. § 542.15(a). If the inmate is not satisfied with the Regional Director's response, he or she may submit an appeal, on the appropriate form (BP-11), to the General Counsel within thirty (30) calendar days from the date of the Regional Director's response. Id. The Regional Director has thirty (30) days to respond, and the General Counsel has forty (40) days. 28 C.F.R. § 542.18.

Where exhaustion is required, a prisoner's procedural default in pursuing administrative remedies bars judicial review of a subsequent habeas corpus petition, absent the prisoner's demonstration of cause and prejudice for the default. Moscato v Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996.) To establish cause, the petitioner must "show that some objective factor external to the defense impeded [the prisoner's] efforts to comply with the ... procedural rule." Murray v. Carrier, 477 U.S. 478, 479 (1986). With regard to the prejudice requirement, the habeas petitioner must prove that he was denied fundamental fairness. Id. at 494.

Computerized indexes of all administrative appeals filed by inmates are maintained by the Regional and Central offices. 28 C.F.R. § 542.19. Petitioner has filed 295 administrative remedies while housed in BOP custody. (Gallagher Decl., ECF No. 12-1 at 32.) Administrative Remedy Case No. 875307 and Case No. 875313 are the only remedies that pertain to the claims he now asserts in this petition, and Petitioner failed to exhaust his remedies with respect to these claims prior to filing his petition. (Gallagher Decl., ECF No. 12-1, ¶¶6-7.)

On September 2, 2016, Petitioner submitted a Request for Administrative Remedy (Case No. 857307), wherein he alleged the RDAP procedures violated BOP policy. (Gallagher Decl., ECF No. 12-1 at 2, ¶9.) On September 8, 2016, this case was rejected because Petitioner submitted too many continuation pages with his request. He was instructed that he could correct the technical error and resubmit his request within 5 days. (Id.)

On September 19, 2016, Petitioner resubmitted his Request for Administrative Remedy, Case No. 875307. (Id., ¶10.) On September 30, 2016, the Warden at FCI Fairton denied his request. (Id.) Petitioner was instructed that he could file an appeal with the Northeast Regional Office within 20 days. (Id.)

On October 19, 2016, Petitioner appealed the Warden's denial to the Northeast Regional Office. (Id., ¶11.) This appeal was denied on November 16, 2016, and Petitioner was instructed that he

could file an appeal with the Bureau of Prisons' Central Office within 30 days of the date of the response. (Id.)

In the meantime, on September 2, 2016, Petitioner submitted a second administrative remedy (Case No. 875313) to the Warden. (Id., ¶6.) He contended the rules for the RDAP were improperly made and alleged the RDAP staff were engaging in discriminatory practices. (Id.) On September 8, 2016, Case No. 875313 was rejected because Petitioner submitted too many continuation pages with his request. (Id.) He was instructed that he could correct the technical error and resubmit his request within 5 days. (Id.)

On September 19, 2016, Petitioner resubmitted his administrative remedy in Case No. 857513. (Id., ¶7.) On September 30, 2016, the Warden denied his remedy and instructed Petitioner that he could file an appeal with the Northeast Regional Office within 20 days. (Id.)

On October 19, 2016, Petitioner appealed Case No. 857513 to the Northeast Regional Office. (Id., ¶8.) On November 16, 2016, Petitioner's appeal was denied, and he was instructed that he could file an appeal with the Bureau of Prisons' Central Office within 30 days of the date of the response. (Id.) As of November 18, 2016, Petitioner had not filed a Central Office Administrative Appeal for Case Number 857513 or Case Number 875037. (Id., ¶12.)

Petitioner's provisional completion date for the unit-based portion of RDAP treatment was October 12, 2016, but he was not due

for release on October 13, 2016, because he was still required to complete community-based treatment for 120 days. (Redondo Decl., ECF No. 14. at 40.) Petitioner's earliest possible release date under § 3621(e) was February 10, 2017, 120 days after his projected unit-based completion date of October 12, 2016. Therefore, when he filed this habeas petition on September 15, 2016, Petitioner had time to complete the final step of the administrative remedy process by appealing to the Central Office,[3] and if relief was denied, he could still file a habeas petition seeking release on February 10, 2017.

Petitioner has not asserted an external impediment that prevented him from meeting the exhaustion requirement. Therefore, the Court will dismiss the petition as procedurally defaulted. In the alternative, as discussed below, the Court would deny the petition on the merits.

B.   Merits of Petitioner's Claims

1.   Whether the decision for Petitioner to repeat Phase II of treatment was arbitrary

Petitioner asserts Dr. Redondo arbitrarily revoked his early release date "without any warning or any right for him to contest the arbitrary decision." (Petr's Mem., ECF No. 1-3 at 6.) First,

---

[3] An appeal with the Bureau of Prisons' Central Office is due within 30 days of the date of the response from the Regional Director. 28 C.F.R. § 542.15. The Central Office response is due within 40 days, but it may request an extension of 20 days. 28 C.F.R. § 542.18.

the Court addresses Petitioner's allegation that Dr. Redondo's decision was arbitrary.

Congress provided that "the Bureau of Prisons shall, subject to the availability of appropriations, provide residential substance abuse treatment . . . for all eligible prisoners . . ." 18 U.S.C. § 3621(e). For inmates who successfully complete RDAP, the BOP may reduce the inmate's sentence by up to one year. 18 U.S.C. § 3621(e)(2)(B).

The Bureau's authority to reduce an inmate's sentence for completion of RDAP falls under 18 U.S.C. § 3621. 18 U.S.C. § 3625 states that the judicial review provisions of the APA "do not apply to the making of any determination, decision, or order under this subchapter," which includes § 3621. Thus, courts have held that they lack jurisdiction to consider challenges to RDAP early release decisions. See Thorndike v. Hollingsworth, Civ. No. 15-2014 (NLH), 2016 WL 4705443, at *5 (D.N.J. Sept. 8, 2016) (collecting cases). The Third Circuit, however, has not determined the applicability of § 3625 to discretionary decisions to revoke an RDAP early release date. Id. at 6. Therefore, this Court will apply the APA's arbitrary, capricious or abuse of discretion standard of review in 5 U.S.C. § 706(2)(A). See id., at **6-7 ("assum[ing], without deciding, that [the court] has jurisdiction to review the BOP's individualized determination for "abuse of discretion.")

Dr. Redondo provided many examples of Petitioner's difficulty in treatment in support his decision to have Petitioner repeat Phase II of the program. ██████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████  ████████████  ████████████████

███████████████████████████████████  █████████

██  ████████████████████████████████████████████

██████████████████████████████

### 2. Due Process Claims

Petitioner contends there is no authority in 28 U.S.C. § 550.53 permitting the RDAP Program Coordinator to revoke a release date, thus "the whole statute violates the Procedural Due Process Clause of the Fourteenth Amendment to the United States." (Petr's Mem., ECF No. 1-3 at 6.) Petitioner claims that before his release date may be revoked, due process requires that he receive a statements of reasons, a right to present witnesses before an impartial tribunal, a preliminary and final revocation hearing, and notice and opportunity to be heard. (Id.) Petitioner also asserts he was denied due process because Dr. Redondo was not impartial; he acted as the charging officer, the investigating officer, and the adjudicating officer. (Id. at 12.)

Second, Petitioner contends he was deprived of substantive due process because he "had a settled expectation of being released

on 10/13/16," contingent only upon completion of 500 hours. (Id. at 7.) Third, Petitioner contends the BOP's action of promising a particular release date and revoking it without any process shocks the conscience in violation of substantive due process. (Id. at 8.)

"The interests protected by the Due Process Clause are 'generally limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Douvos v. Quintana, 382 F. App'x 119, 122 (3d Cir. 2009) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). "[E]xpulsion from a rehabilitative program for a violation of its rules and regulations "falls within the expected perimeters of the sentence imposed by a court of law." Id. Thus, there is no due process right, substantive or procedural, associated with the RDAP Program Coordinator's authority to revoke a release date due to failure to complete RDAP.

### 2. Equal Protection Claims

Petitioner claims Dr. Redondo's revocation of his early release date violated the Equal Protection Clause of the Fourteenth Amendment. (Petr's Mem., ECF No. 1-3 at 8.) First, Petitioner alleges that within RDAP there are two groups of inmates who are similarly situated and yet treated differently, inmates who are eligible for early release after RDAP completion, and inmates who are not eligible for early release after RDAP completion. (Id. at

14.) Inmates who are eligible for early release are treated more harshly for minor infractions. (Id.)

Second, Petitioner asserts a violation of the Equal Protection Clause based on race. (Petr's Mem., ECF No. 1-3 at 16.) Petitioner alleges there is only one non-white RDAP staff member, and whites inmates get preferential treatment. (Id.) African-American inmates are punished "at a rate of (15) times worse" than white inmates. (Id.)

It is the Fifth Amendment that protects the right of federal prisoners to equal protection under the law. See e.g. Mack v. Warden Loretto FCI, 839 F.3d 286, 305 (3d Cir. 2016). Fifth Amendment equal protection claims are analyzed in the same manner as claims under the Fourteenth Amendment. Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 217 (1995) (citations omitted). The purpose of the Fourteenth Amendment Equal Protection Clause is "to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." PG Publ'g Co. v. Aichele, 705 F.3d 91, 114 (3d Cir. 2013) (quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 564, (2000) (quoting Sioux City Bridge Co. v. Dakota Cnty., 260 U.S. 441, 445 (1923)).

A district court may only extend the writ of habeas corpus to an inmate if he demonstrates that "[h]e is in [Bureau] custody in

violation of the Constitution or laws of the United States." 28 U.S.C. § 2241(c)(3).  Only punishment that affects Petitioner's release date can be challenged in a habeas claim on the basis that his custody is in violation of the U.S. Constitution, federal law or treaties. Inmates who are not eligible for early release after RDAP completion are not similarly situated to Petitioner in this respect.  Therefore, this claim is not cognizable.

Petitioner also raised a race-based equal protection claim. He alleges that African American RDAP participants are punished more frequently and more harshly than white RDAP participants because all but one RDAP staff member is white.  Petitioner has not alleged that the decision to have him repeat Phase II of the unit-based portion of RDAP was based on racial discrimination. Only a claim that his early release date was revoked based on racial discrimination states a cognizable challenge to the legality of his custody.  The Court will deny Petitioner's race-based Equal Protection Claim for habeas relief, but Petitioner may pursue a Bivens claim for equal protection violations that did not lengthen his term of imprisonment.

### 3.  Retaliation Claims

On August 31, 2016, DTS Jennifer Pearson wrote an incident report because Petitioner missed a call out appointment.  (Petr's Mem., ECF No. 1-3 at 20.)  Petitioner claims the real reason for the incident report was that he filed a grievance against RDAP

staff on August 26, 2016.  (Id.)  He also alleges that he was retaliated against for writing and distributing a voluntary survey requesting inmate feedback about the RDAP Program.  (Id.)

Respondent counters that Petitioner's retaliation claim fails because he has not endured or suffered from any adverse action in connection with the incident report.  (Resp's Brief, ECF No. 12 at 40.)  Furthermore, the issuance of an incident report after the commission of a prohibited act is reasonably related to a legitimate penological interest.  (Id.)

Because this is a habeas claim, Petitioner must show that he is in custody in violation of the U.S. Constitution or laws or treaties of the United States.  Petitioner does not allege he was sanctioned with loss of good conduct time based on the incident report.  Thus, he does not state a cognizable habeas claim.  See Castillo v. FBOP FCI Fort Dix, 221 F. App'x 172, 175 (3d Cir. 2007) (disciplinary sanctions that do not affect the execution of a criminal sentence are not cognizable under § 2241.)  The Court will, however, address Petitioner's claim that his early release date was revoked in retaliation for his free speech.

Petitioner stated that in July 2016, he began handing out a voluntary survey that he created about the RDAP program to other inmates.  (Petr's Mem., ECF No. 1-3 at 2.)  The survey sought opinions from the inmates about how the RDAP program was being conducted.  (Id.)  Petitioner gave the completed surveys to Dr.

Redondo.  (Id.)  In all of the survey responses, participants complained about various aspects of the program, particularly the pull-up system and the confronting and levelling sessions.  (Id.) Petitioner had been challenging the practice of allowing senior inmates in the program to have authority over other inmates, asserting that it violated the Eighth Amendment.  (Id. at 3.)

Petitioner alleges that soon after he conducted the survey and complained about aspects of the program, his early release date was revoked.  (Id.)  He concludes the timing of these events establishes a causal connection between his free speech and the revocation of his early release date.  (Id.) Respondent counters that it may prevail on a retaliation claim by proving that it would have made the same decision absent the protected conduct, for reasons reasonably related to a legitimate penological interest. (Resp's Brief, ECF No. 12 at 38.)



Therefore, the record rebuts the claim that Petitioner was forced to repeat Phase II of the unit-based RDAP treatment in retaliation for the survey he created and his complaints about how the program was run.

III. CONCLUSION

Petitioner procedurally defaulted his habeas claims because he failed to complete the administrative remedy process by appealing his grievances to the General Counsel in the Central Office. In the alternative, the Court would deny Petitioner's claims on the merits.

s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**United States District Judge**